### ANDREWS v. KOLLMORGEN.

BILLS AND NOTES—FRAUD—DIRECTED VERDICT.

> In an action on a promissory note, where the defense was fraud and failure of consideration, and the record shows that plaintiff in good faith advanced to defendants the amount represented by the note to be used as the first payment on the purchase price of a lot, and that they later refused to purchase the lot because the owner thereof refused to discharge certain tax liens thereon, but no fraud of any kind was shown against plaintiff, the trial court properly directed a verdict in his favor.[1]

Error to Genesee; Brennan (Fred W.), J. Submitted October 15, 1924. (Docket No. 94.) Decided December 10, 1924.

Assumpsit by J. Elwood Andrews against Ernest C. Kollmorgen and others on a promissory note. Judg-

[1] Bills and Notes, 8 C. J. §§ 1371, 1378, 1382.

ment for plaintiff on a directed verdict.     Defendants
bring error.     Affirmed.

*Charles H. Withey,* for appellants.

*George W. Cook,* for appellee.

McDONALD, J.     This action is upon a promissory
note for $500 given by the defendants on July 12,
1921, payable to the plaintiff 30 days after date with
interest at 7 per cent. after maturity until paid.     The
defense is fraud and failure of consideration.     At the
conclusion of the proofs the court directed a verdict
for the plaintiff.     Error is assigned on various rulings
excluding testimony offered by the defendants and on
the action of the court in directing a verdict for the
plaintiff.

The defendants are officials of the Holy Trinity
Evangelical Lutheran Church of Flint, Michigan.
They desired to purchase a lot adjoining that upon
which their church is built.     The lot was owned by
Clarence Cameron.     The negotiations were carried on
by J. O. Andrews, a real estate broker.     The plaintiff
is his uncle.     The agreement for the purchase of the
lot was made at the home of one of the defendants.
Both J. O. Andrews and the plaintiff were present.
The purchase price of the lot was to be $3,600, on
which an initial payment of $500 was required.     The
defendants did not have the money with which to make
this payment.     The plaintiff agreed to loan them that
amount on their 30-day note.     The defendants ac-
cepted his offer and the note in suit was given.     The
money did not come into the hands of the defendants
but was paid to J. O. Andrews, who turned it over
to Mr. Cameron.     At the time of the agreement to
purchase the lot, it was understood and agreed that
the defendants would be furnished with an abstract
showing a clear title in Mr. Cameron.     Subsequently

the defendants sought a loan to be secured by a mortgage on the lot from the First National Bank of Flint, with which to pay the $500-note and the balance of the purchase price. An examination of the abstract showed liens on the property for two or three years of unpaid taxes. Mr. Cameron refused to discharge these liens and the bank declined to make the loan. Thereupon the defendants repudiated the contract of purchase and demanded of the plaintiff a return of their note.

It appears that the defendants acting for their church felt compelled to purchase the lots in order to silence Mr. Cameron, who was threatening them with injunction proceedings on account of the violation of certain building restrictions shown in the plat. They had secured a release of the restrictions from all of the property owners except Mr. Cameron. His property adjoined the lot on which it was proposed to erect the church. The plaintiff says that he knew Cameron to be a fighter and that the litigation would create a bad feeling in the neighborhood and would be detrimental to the church, and that his only purpose in interesting himself in the transaction was to bring about an amicable adjustment of the controversy. Mr. Carlson, one of the defendants, testifies that at the meeting when the agreement to purchase the lot was made:

"He (the plaintiff) told us men he thought it rather unbecoming a church to get into litigation with Mr. Cameron. I thought so too. The back end of our church would be right up against the Cameron property. I think it was talked there that night that Cameron claimed it was going to depreciate his property. J. E. Andrews lived on that plat. He was the one who offered to loan us $500. After he went away and after J. O. Andrews went away, we four men talked it over and decided that was the proper thing to do. We agreed among ourselves to borrow

that $500 from J. E. Andrews and give our note for it."

We have not discovered any evidence in this record showing or tending to show fraud or misrepresentation on the part of the plaintiff.    If the note had been given to Mr. Cameron and he was suing on it, the situation would be different.    But this plaintiff was not interested in the transaction except in the sense that he was willing to loan defendants the amount of the first payment on the contract in order to prevent litigation that would create a harmful atmosphere in the community where he lived.    He was not acting as the agent of Mr. Cameron and was in no other way financially interested in the property. In view of the undisputed testimony as to the plaintiff's connection with the entire transaction, it is plain that there is no legal defense to this action and that, therefore, the court did not err in directing a verdict in his favor.

No other assignments of error require discussion.

The judgment is affirmed.    The plaintiff will have costs.

CLARK, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.